http://www.va.gov/vetapp16/Files2/1617305.txt

Citation Nr: 1617305 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 09-37 924 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama

THE ISSUES

1. Entitlement to service connection for schizophrenia, to include as secondary to posttraumatic stress disorder (PTSD), and for treatment purposes only under 38 U.S.C.A., chapter 17.

2. Entitlement to a total disability rating based on individual unemployability (TDIU).

REPRESENTATION

Appellant represented by: The American Legion

WITNESSES AT HEARING ON APPEAL

Appellant and his spouse

ATTORNEY FOR THE BOARD

M. G. Mazzucchelli, Counsel

INTRODUCTION

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The Veteran served on active duty from August 1966 to July 1970.

These matters come before the Board of Veterans' Appeals (Board) from a November 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama. In that decision, the RO, in pertinent part, denied entitlement to service connection for schizophrenia, to include for treatment purposes only under 38 U.S.C.A., chapter 17.

In August 2014, the Veteran testified during a hearing at the RO before the undersigned; a transcript of that hearing is of record.

In a May 2015 decision, the Board, in pertinent part, remanded the issues of entitlement to service connection for schizophrenia, to include as secondary to PTSD and for treatment purposes only under 38 U.S.C.A., chapter 17; and entitlement to a TDIU, for further development.

The issue of entitlement to service connection for schizophrenia, to include as secondary to PTSD and for treatment purposes only under 38 U.S.C.A., chapter 17, is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. The Veteran is in receipt of service connection for PTSD rated 70 percent disabling.

2. The evidence is approximately evenly balanced as to whether the Veteran's service connected PTSD renders him unable to obtain and maintain substantially gainful employment.

CONCLUSION OF LAW

With reasonable doubt resolved in favor of the Veteran, the criteria for entitlement to a TDIU have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

A TDIU may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability, provided that the disability is rated 60 percent or more. 38 C.F.R. § 4.16(a). The Veteran has met the percentage requirements in this case as he is in receipt of service connection for PTSD, rated 70 percent. 

The remaining question is whether the service-connected disability precludes the Veteran from securing and following a substantially gainful occupation. See 38 C.F.R. § 4.16(a). The fact that a veteran is unemployed or has difficulty finding employment does not alone warrant assignment of a TDIU, as a high rating itself establishes that his disability makes it difficult for him to obtain and maintain employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). Rather, the evidence must show that he is incapable "of performing the physical and mental acts required" to be employed. Id. at 363. Thus, the central question is whether a veteran's service-connected disability alone is of sufficient severity to produce unemployability, and not whether a veteran could find employment. Id. Consideration may be given to a veteran's education, training, and special work experience, but not to his age or to impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19.

The Veteran indicated on the August 2008 VA examination that his job in pest control was stressful, and he indicated on the November 2013 VA examination that he left this job for a higher paying job. He also indicated that he was last employed in 2002 at another pest control company which ended when he went into the hospital for congestive heart failure. The Veteran also stated that he got along well with other people in these employment positions and had no problems in his work settings. He also reported that he went on Social Security disability in 2003 due to congestive heart failure. A November 2013 VA examiner found that the Veteran's mental health symptoms would affect but not preclude gainful employment and the Veteran would work best in a reduced social environment with casual and infrequent social interactions. This evidence weighs against the claim.

On VA examination in July 2015, the examiner stated that the Veteran's PTSD caused occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. The examiner noted that the Veteran suffered from mild memory loss, such as forgetting names, directions or recent events; forgetting to complete tasks; difficulty in establishing and maintaining effective work relationships; and difficulty in adapting to stressful circumstances, including work or a worklike setting. The examiner opined that the Veteran's psychiatric symptomology "could negatively impact" his "ability to be employed. Symptomology could result in Veteran's having problems with reliability and productivity. Veteran could have difficulty with concentration and following instructions. It could affect his ability to interact appropriately and predictably with coworkers, supervisors, and the general public."

The Board notes that opinions of health care professionals are not dispositive in adjudicating TDIU claims; rather, the Board must assess the functional limitations noted by the health care professionals and determine whether they render the Veteran unemployable consistent with the applicable regulations. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013) ("[A]pplicable regulations place responsibility for the ultimate TDIU determination on the VA, not a medical examiner"). 

The Veteran worked for a number of years in pest control. The Veteran indicated during the Board hearing that he was on Social Security due to his age, but also that he stopped working in 2002 due to his PTSD. He described problems with anger and sleeplessness that affected his ability to get along with customers. The Board finds this testimony competent and credible. Geib, 733 F.3d at 1354 (whether a veteran can perform the physical and mental acts required by employment is an issue about which a lay person may provide competent evidence; "neither the statute nor the relevant regulations require the combined effect [of disabilities] to be assessed by a medical expert").

Given the significant impact of the service connected PTSD on the Veteran's ability to get along with coworkers, supervisors, and the general public, the evidence is at least evenly balanced as to whether PTSD precludes him from obtaining and maintaining substantially gainful employment. As the reasonable doubt created by this relative equipoise in the evidence must be resolved in favor of the Veteran, entitlement to a TDIU is warranted. 38 U.S.C.A. § 5107(b).

ORDER

Entitlement to a TDIU is granted, subject to controlling regulations governing the payment of monetary awards.

REMAND

The Board's previous remand noted that there was evidence that the Veteran was diagnosed with schizophrenia about four years after service and that the schizophrenia may be associated with his military service or with his service connected PTSD. The Board remanded the case for a VA examination with an opinion on the etiology of the Veteran's schizophrenia. 

The VA examiner in July 2015 determined that the Veteran did not have schizophrenia; thus, she did not address the questions regarding the etiology of that condition.

Service connection may be awarded for a disability if the claimant had the disability at the time the claim was filed or during the pendency of that claim, even if no disability is present at the time of the claim's adjudication. See McClain v. Nicholson, 21 Vet. App. 319 (2007). See also Romanowsky v. Shinseki, 26 Vet. App. 289 (2013) (holding that a diagnosis rendered prior to the claims period may be sufficient to constitute a current disability). 

In this case, the record contains diagnoses of schizophrenia in July 1974, April 1976, July 1979, April 1982, November 2007, and November 2013. 

Schizophrenia was not diagnosed by the July 2015 VA examiner, however there are diagnoses of schizophrenia in the record, including during the appeals period. The examiner was specifically asked to provide an opinion as to the etiology of that disorder, and she did not do so. In light of the above, the Board must remand to schedule a new VA examination to obtain an adequate opinion. Stegall v. West, 11 Vet. App. 268 (1998).

As the claims for service connection for schizophrenia and service connection for schizophrenia for treatment purposes only under 38 U.S.C.A., chapter 17 have been adjudicated together, and the grant of the former claim would render moot the latter claim, they are inextricably intertwined. See Parker v. Brown, 7 Vet. App. 116 (1994) (two issues are "inextricably intertwined" when they are so closely tied together that a final Board decision cannot be rendered unless both are adjudicated). On this basis, the claim for service connection for schizophrenia for treatment purposes only under 38 U.S.C.A., chapter 17, must also be remanded.

Accordingly, the case is REMANDED for the following action:
(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Schedule the Veteran for a VA examination as to the etiology of his schizophrenia. All necessary tests should be conducted. 

The electronic claim file must be made available to the examiner for review.

The examiner should provide opinions as to the following: 

a) Does the Veteran meet the criteria for a current diagnosis of schizophrenia? In determining whether he meets the criteria for a current diagnosis, please consider medical and lay evidence dated both prior to and since the filing of the February 2009 claim. Please note that although the Veteran may not meet the criteria for a diagnosis at the present time, diagnoses made prior to and since the date of claim filing meet the criteria for a "current" diagnosis. For any diagnoses of record which cannot be validated or confirmed, please explain why such diagnoses cannot be confirmed. 
b) If the Veteran meets the criteria for a current diagnosis of schizophrenia (as explained above), is it as least as likely as not (50 percent probability or greater) that schizophrenia manifested (as opposed to having been diagnosed) either during service, or within one year after separation from service?
c) If it is less likely than not that the Veteran's schizophrenia manifested either during or within one year after his separation from service, is it at least as likely as not that the Veteran's schizophrenia, diagnosed in 1974, 1976, 1979, 1982, 2007, and 2013, is otherwise related to his military service? In this regard, the examiner should specifically express an opinion as to whether the schizophrenia is either (a) caused or (b) aggravated by the service connected PTSD.

A complete rationale should accompany each opinion provided.

The examiner is advised that the Veteran is competent to report symptoms and treatment, and that his reports must be taken into account in formulating the requested opinions.

2. After the above development has been completed, readjudicate the claims for entitlement to service connection for schizophrenia, and entitlement to service connection for schizophrenia for treatment purposes only under 38 U.S.C.A., chapter 17. If any benefit sought on appeal remains denied, furnish the Veteran and his representative a supplemental statement of the case and return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court 

of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
S.C. KREMBS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs