Citation Nr: 1826273 
Decision Date: 04/27/18 Archive Date: 05/07/18

DOCKET NO. 15-19 232 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to service connection for a right shoulder disability. 

2. Entitlement to service connection for a left shoulder disability. 

3. Entitlement to service connection for a right elbow disability. 

4. Entitlement to service connection for a left elbow disability. 

5. Entitlement to service connection for a right hip disability. 

6. Entitlement to service connection for a left hip disability. 

7. Entitlement to service connection for a right ankle disability. 

8. Entitlement to service connection for a left ankle disability. 

9. Entitlement to service connection for a neurological condition of the upper right extremity, to include right carpal tunnel syndrome.

10. Entitlement to service connection for a neurological condition of the upper left extremity, to include left carpal tunnel syndrome.

11. Entitlement to service connection for a variously diagnosed psychiatric disorder. 

12. Entitlement to service connection for a right knee disability. 

13. Entitlement to service connection for sleep apnea. 

14. Entitlement to an initial rating in excess of 10 percent for dislocated semilunar cartilage of the left knee with frequent episodes of locking, pain, and effusion into the joint for the periods on appeal prior to April 28, 2016, and from July 1, 2016, to April 18, 2017.

15. Entitlement to a rating in excess of 20 percent for dislocated semilunar cartilage of the left knee with frequent episodes of locking, pain, and effusion into the joint for the period on appeal from April 19, 2017.

16. Entitlement to an initial rating in excess of 20 percent for lumbar degenerative disc disease and chronic myositis and thoracic degenerative joint disease.

17. Entitlement to an initial rating in excess of 10 percent for cervical spondylosis, cervical discogenic, and cervical hematoma disease for the period on appeal prior to November 20, 2014, and from January 1, 2015.

18. Entitlement to a temporary total rating due to convalescence for a cervical spine disability. 

19. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


ATTORNEY FOR THE BOARD

M. C. Wilson, Counsel


INTRODUCTION

The Veteran served on active duty in the United States Army from May 1981 to March 1988 and his decorations include the Parachutist Badge

These matters come before the Board of Veterans' Appeals (Board) on appeal from rating decisions that were issued by the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, Puerto Rico, in September 2013, April 2014, January 2015, and August 2015.

The Board has recharacterized the Veteran's claims for service connection for right and left carpal tunnel syndrome as claims for service connection for a neurological condition of the upper right extremity and a neurological condition of the upper left extremity, to include carpal tunnel syndrome. See Clemons v. Shinseki, 23 Vet. App. 1 (2009) (the scope of a disability claim includes any disability that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record).

These matters were previously before the Board in January 2017, at which time they were remanded to obtain relevant treatment records, provide examinations, and obtain medical opinions, inter alia. Review of the record indicates that VA has not complied with the January 2017 remand directives; thus, a remand is necessary. Stegall v. West, 11 Vet. App. 268 (1998) (a remand by the Board confers on the Veteran, as a matter of law, the right to substantial compliance with the remand).

In July 2017, the RO granted service connection for cervical spine and thoracic spine disabilities, which represents a complete grant of the benefits sought on appeal. Thus, these issues are no longer before the Board. See Grantham v. Brown, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997). Notably, the Veteran submitted a timely August 2017 Notice of Disagreement with the initial ratings assigned for these disabilities, the RO issued a Statement of the Case in November 2017, and the Veteran perfected his appeal as to these issues in January 2018. Thus, the Board finds that the matter of the Veteran's entitlement to increased initial ratings for his cervical and thoracic spine disabilities is properly before the Board. In so finding, the Board notes that the Veteran's service-connected thoracic spine disability has been rated with a service-connected lumbar spine disability, and he currently has a single 20 percent rating for both disabilities.

A private dermatopathology report that was associated with the claims file in October 2016 raises the issue of the Veteran's entitlement to service connection for skin cancer. The Veteran is advised that this evidence does not meet the standards of a complete claim under 38 C.F.R. § 3.150(a). On remand, the Agency of Original Jurisdiction (AOJ) should notify the Veteran as to the procedures required under 38 C.F.R. § 3.155 for filing a claim for VA benefits. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (2012).

The appeal is REMANDED to the AOJ. VA will notify the appellant if further action is required.


REMAND

The Board finds that a remand is necessary to provide additional examinations and obtain adequate medical opinions.

The Veteran's claims for service connection for a bilateral shoulder disability, bilateral elbow disability, bilateral hip disability, bilateral ankle disability, carpal tunnel syndrome, psychiatric disorder, and a right knee disability were remanded by the Board in January 2017 to provide examinations and obtain medical opinions regarding the etiology of the conditions. Although VA provided examinations in April 2017, the designated examiners failed to address pertinent medical evidence that was identified by the Board in the January 2017 remand. Specifically, the examiners did not address a May 2014 private treatment record from Dr. C. Quesada, a December 2014 Social Security Administration (SSA) Disability Determination Explanation, and an August 2015 letter from Dr. A. Munet, which support that such disabilities are either related to service or developed secondary to his service-connected cervical spine and/or service-connected lumbar spine disabilities. Thus, new opinions should be obtained on remand. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (indicating that VA must ensure that an examination or opinion is adequate when it undertakes to provide an examination or obtain an opinion).

In addition, with regard to the claim for service connection for a right knee disability, one of the April 2017 examiners opined that it is less likely than not that the Veteran's right knee osteoarthritis was aggravated by his service-connected left knee and lumbar spine disabilities because there was no evidence of aggravation of his right knee condition during service and there is no evidence that the right knee condition existed prior to service. In so opining, the Board notes that the examiner failed to address whether the Veteran's service-connected disabilities may have aggravated his nonservice-connected right knee disability after his discharge from active service; thus, the opinion is inadequate as to this matter.

With regard to the claim for service connection for a psychiatric disorder, an April 2017 examiner opined that the claimed condition was less likely than not incurred in or caused by an in-service injury, event, or illness because "[t]here is no evidence of mental or psychiatric symptomatology or treatment prior to or during active military service to consider as aggravated by service-connected conditions." In an August 2017 addendum, it was noted that the Veteran's psychiatric disorder clearly and unmistakably existed prior to service and was not aggravated beyond its natural progression by an in-service event, injury, or illness. In light of the inconsistency between the April 2017 and August 2017 opinions regarding the date of onset of the Veteran's condition, the Board finds the opinions inadequate.

With regard to the claim for service connection for bilateral carpal tunnel syndrome, an April 2017 examiner noted that the Veteran currently has bilateral ulnar neuropathy, he does not have carpal tunnel syndrome, and these findings are supported by an EDX study that was done in May 2016. The examiner concluded that the ulnar sensory neuropathy is not related to a preexisting tendons condition of the right hand, but failed to address whether his right ulnar neuropathy reflects a permanent increase in severity during service of the preexisting severed tendons of the right hand and failed to address whether his left ulnar neuropathy had its onset during his period of active service. This opinion must be obtained on remand.

Further, with regard to the claim for service connection for a bilateral ankle disability, an April 2017 examiner reported that the Veteran does not have a current diagnosis associated with the claimed condition and declined to provide an opinion as to the etiology of the claimed condition because no ankle condition or pathology was identified by history or physical examination. The Board notes, however, that the Veteran may be entitled to service connection for a disability that was present at any time during the appeal period (since May 2014), and Dr. C. Quesada noted a diagnosis of osteoarthritis of the ankles in his May 2014 correspondence. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); see also Romanowsky v. Shinseki, 26 Vet. App. 289, 293 (2013). Further, to the extent that the Veteran does not have a diagnosable ankle disability, VA must consider whether the Veteran has functional impairment for which service connection may be granted. See Saunders v. Wilkie, 2018 U.S. App. LEXIS 8467, at *13-17 (Apr. 3, 2018) (indicating that the term "disability" refers to the functional impairment of earning capacity, rather than the underlying cause of the impairment, and pain alone may be a functional impairment). Thus, a new opinion must be obtained on remand.

In addition, with regard to the Veteran's December 2016 statement that his bilateral shoulder disability developed secondary to the therapy used to treat his service-connected cervical spine disability, an opinion that addresses this theory must be obtained on remand.

Additionally, the Board acknowledged in the January 2017 remand that the United States Court of Appeals for Veterans Claims (Court) recently held in Correia v. McDonald, 28 Vet. App. 158 (2016), that the testing listed in the final sentence of 38 C.F.R. § 4.59 is required unless a medical examiner determines that it cannot or should not be conducted. The pertinent sentence states that the joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint.

Since the January 2017 remand, the Court issued the decision Sharp v. Shulkin, 29 Vet. App. 26 (2017), concerning the adequacy of VA orthopedic examinations. In Sharp, the Court held that before a VA examiner opines that he or she cannot offer an opinion as to additional functional loss during flare-ups without resorting to speculation based on the fact that the examination was not performed during a flare, the examiner must "elicit relevant information as to the veteran's flares or ask him to describe the additional functional loss, if any, he suffered during flares and then estimate the veteran's functional loss due to flares based on all the evidence of record, including the veteran's lay information, or explain why she could not do so."

In light of these decisions, the Board finds that the April 2017 examinations that were provided to assess the Veteran's left knee, thoracic spine, and cervical spine disabilities are inadequate for resolution of the Veteran's claims for increased initial ratings and new VA examinations that adequately address these disabilities should be provided.

As acknowledged previously, a remand of the present appeal is also necessary to obtain pertinent private treatment records. VA should make reasonable efforts to obtain records of the Veteran's treatment by Dr. A. Munet that are dated since January 2005. Although the record indicates that VA made two prior attempts to obtain this evidence in July 2015 and August 2015, the first letter was returned to VA as undeliverable. See 38 U.S.C. § 5103A (2012); 38 C.F.R. § 3.159 (2017).

Accordingly, the case is REMANDED for the following action:

(This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Request that the Veteran provide or authorize VA to obtain records of his treatment by Dr. A. Munet that are dated since 2005, and associate any outstanding VA treatment records with the claims file. Any negative responses should be in writing and associated with the claims file. 

2. Notify the Veteran he may submit statements from himself and others who have first-hand knowledge of the nature and extent of his in-service and post-service bilateral shoulder, bilateral elbow, bilateral hip, bilateral ankle, bilateral carpal tunnel syndrome, psychiatric disorder, sleep apnea, and bilateral knee disability symptoms, in addition to any relationship between the disabilities and his service and/or service-connected left knee, lumbar spine, thoracic spine, and/or cervical spine disabilities.

3. After completing the development requested above, schedule the Veteran for appropriate VA examinations to determine the current nature and severity of his left knee, thoracic spine, and cervical spine disabilities. The claims file should be made available to and reviewed by the examiner and all necessary tests should be performed. All findings should be reported in detail.

The examiner should identify all left knee, thoracic spine, and cervical spine pathology found to be present. The examiner should conduct all indicated tests and studies, to include range of motion studies. The joints involved should be tested in both active and passive motion and in weight-bearing and non weight-bearing. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.

The examiner should describe any pain, weakened movement, excess fatigability, instability of station and incoordination present. 

The examiner should also state whether the examination is taking place during a period of flare-up. If not, the examiner should ask the Veteran to describe the flare-ups he experiences, including: frequency, duration, characteristics, precipitating and alleviating factors, severity and/or extent of functional impairment he experiences during a flare-up of symptoms and/or after repeated use over time. 

Based on the Veteran's lay statements and the other evidence of record, the examiner should provide an opinion estimating any additional degrees of limited motion caused by functional loss during a flare-up or after repeated use over time. If the examiner cannot estimate the degrees of additional range of motion loss during flare-ups or after repetitive use without resorting to speculation, the examiner should state whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e. no one could respond given medical science and the known facts) or by a deficiency in the record or the examiner (i.e. additional facts are required, or the examiner does not have the needed knowledge or training).

4. Then schedule the Veteran for examinations to determine the nature and etiology of his bilateral shoulder, bilateral elbow, bilateral hip, bilateral ankle, bilateral carpal tunnel syndrome, psychiatric disorder, and right knee. The Veteran's claims file should be provided to and reviewed by the examiner. All indicated studies should be performed. 

Based on review of the record, and interview of the Veteran, the examiner should provide opinions that respond to the following questions. In providing the requested opinions, the examiner is asked to consider the following records: the May 2014 private treatment record from Dr. C. Quesada; the December 2014 SSA Disability Determination Explanation; and the August 2015 letter from Dr. A. Munet.

(a) Please identify the Veteran's bilateral shoulder disability, bilateral elbow disability, bilateral hip disability, bilateral ankle disability, neurological disability of the bilateral upper extremities, psychiatric disorder, and right knee disability. To the extent that the Veteran does not have a diagnosable disability, the examiner should note whether the Veteran has demonstrated functional impairment, to include pain, in the noted body part.

(b) Provide an opinion whether it is at least as likely as not the Veteran's bilateral shoulder disability, bilateral elbow disability, bilateral hip disability, bilateral ankle disability, neurological disability of the bilateral upper extremities, psychiatric disorder, and right knee disability had their onset in service, to include as a result of parachute jumping. In providing this opinion, the examiner is asked to address whether it is at least as likely as not that the bilateral ankle osteoarthritis that was noted by Dr. C. Quesada in May 2014 had its onset in service, to include as a result of parachute jumping. 

(c) Provide an opinion whether it is at least as likely as not that the Veteran's bilateral shoulder disability, psychiatric disorder, and right knee disability were caused by his service-connected left knee, lumbar spine, thoracic spine, and/or cervical spine disabilities, to include any therapy used to treat his service-connected disabilities. In providing this opinion, the examiner is asked to address the Veteran's assertion that his bilateral shoulder disability developed secondary to the therapy used to treat his service-connected cervical spine disability.

(d) Provide an opinion whether it is at least as likely as not that the Veteran's bilateral shoulder disability, psychiatric disorder, and right knee disability were aggravated by his service-connected left knee, lumbar spine, thoracic spine, and/or cervical spine disabilities, to include any therapy used to treat his service-connected disabilities. In providing this opinion, the examiner is asked to address the Veteran's assertion that his bilateral shoulder disability developed secondary to the therapy used to treat his service-connected cervical spine disability.

(e) Provide an opinion as to whether the Veteran's current neurological disability of the bilateral upper extremities is related to the diagnosed right hand severed tendons on service enlistment examination, and if so, whether the current right upper extremity neurological disability, which was recently identified as ulnar neuropathy, reflects a permanent increase in severity during service of the pre-existing severed tendons of the right hand. 

(f) As to the Veteran's psychiatric disability, please identify all psychiatric disabilities found to be present and specifically opine as to whether it is at least as likely as not that any psychiatric disability found to be present is (1) related to or had its onset in service; (2) was caused by the impact of the Veteran's service-connected disabilities, to include in the aggregate; and (3) was aggravated by the impact of the Veteran's service-connected disabilities, to include in the aggregate.

The examiner should give a reasoned explanation for all opinions provided. If the examiner is unable to provide a medical opinion, then he or she should provide a statement as to whether there is any additional evidence that could enable an opinion to be provided, or whether the inability to provide the opinion is based on the limits of medical knowledge.

5. Then readjudicate the appeal. If the benefits sought on appeal remain denied, the Veteran should be provided with a Supplemental Statement of the Case. An appropriate period of time should be allowed for response. 

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).





_________________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C. § 7252 (2012), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2017).