﻿Citation Nr: AXXXXXXXX
Decision Date: 03/12/19 Archive Date: 03/12/19

DOCKET NO. 181010-534
DATE: March 12, 2019

ORDER

Entitlement to an effective date of award of entitlement to service connection for other specified trauma and stress related disorder (claimed as PTSD and previously under DC 9411), prior to December 14, 2015, is denied. 

Entitlement to an initial rating in excess of 30 percent from December 14, 2015 for other specified trauma and stress related disorder (claimed as PTSD and previously under DC 9411) is denied.

Entitlement to service connection for appendiceal abscess is denied. 

Entitlement to service connection for bilateral pes planus is denied. 

Entitlement to service connection for ischemic heart disease is denied. 

Entitlement to service connection for left eye condition is denied. 

Entitlement to service connection for left lower groin/lower abdomen injury is denied. 

Entitlement to service connection for right sided carpal tunnel syndrome is denied. 

Entitlement to service connection for scar, right ear is denied. 

FINDINGS OF FACT

1. The Veteran submitted a claim for nervous disorder in March 1977 that was adjudicated by the VA regional office in October 2009 as a claim for service connection for PTSD. The Veteran did not perfect an appeal to that rating decision. 

2. A claim to reopen the previously disallowed claim for service connection for an acquired psychiatric disorder, to include PTSD, was not received prior to December 14, 2015.

3. The Veteran’s other specified trauma and stress related disorder manifested in symptoms of anxiety and chronic sleep impairment that constituted occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, but not symptoms productive of occupational and social impairment with reduced reliability and productivity. 

4. The Veteran had a diagnosed condition of appendiceal abscess that was not incurred in or the result of active service. 

5. The Veteran’s pes planus, noted at service entry, did not undergo an increase in severity during service. 

6. The preponderance of the evidence of record is against finding that the Veteran has a formal diagnosis of ischemic heart disease. 

7. The preponderance of the evidence of record is against finding that the Veteran has a diagnosed left eye condition for the purposes of VA disability compensation.

8. The preponderance of the evidence of record is against finding that the Veteran has a diagnosed left lower groin/lower abdomen injury. 

9. The Veteran does not undergo current treatment for or have a diagnosed right carpal tunnel syndrome condition during the period on appeal.

10. The Veteran’s right ear scar pre-existed service but did not undergo an increase in severity during service, and postservice treatment records do not indicate that there is a current symptomatic condition related to right ear scar.

CONCLUSIONS OF LAW

1. The criteria for an effective date of grant of service connection for other specified trauma and stress related disorder (claimed as PTSD and previously under DC 9411), prior to December 14, 2015, is denied. 38 U.S.C. § 1155, 5107; 38 C.F.R. § 3.300. 

2. The criteria for an initial disability rating in excess of 30 percent from December 14, 2015, for evaluation of other specified trauma and stress related disorder (claimed as PTSD and previously under DC 9411), have not been met. 38 U.S.C. § 1155, 5107; 38 C.F.R. § 3.159, 4.130, DC 9410. 

3. The criteria for entitlement to service connection for appendiceal abscess have not been met. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. 

4. The criteria for entitlement to service connection for bilateral 3rd degree pes planus have not been met. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. 

5. The criteria for entitlement to service connection for ischemic heart disease have not been met. 38 U.S.C. § 1110; 38 C.F.R. § 3.303, 3.3007, 3.309. 

6. The criteria for entitlement to service connection for left eye condition have not been met. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. 

7. The criteria for entitlement to service connection for left lower groin/lower abdomen injury have not been met. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. 

8. The criteria for entitlement to service connection for right sided carpal tunnel syndrome have not been met. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. 

9. The criteria for entitlement to service connection for scar, right ear have not been met. 38 U.S.C. § 1110; 38 C.F.R. § 3.303, 3.306. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from December 1962 to December 1967 in the United States Marine Corps to include verified service in the inland waterways of the Republic of Vietnam during the Vietnam era. 

The Board notes that the rating decision on appeal was issued in October 2018. On October 10, 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). The Veteran’s attorney specifically requested Direct Review of the issues of entitlement to a higher rating and earlier effective date for other specified trauma and stress related disorder; and service connection for pes planus, left eye disability, ischemic heart disease, appendiceal abscess, left groin/lower abdomen injury, right ear scar, and right sided carpal tunnel syndrome. By selecting Direct Review, the Veteran’s attorney acknowledged that the Board’s review of the appeal would be based on the evidence at the time of the prior October 2018 decision, that no additional evidence would be submitted, and that the Veteran was not requesting a hearing in this appeal. Accordingly, the Board will proceed to address the appeal of these issues based on the evidence of record at the time of the October 2018 rating decision that is on appeal.

The Board observes that additional issues of entitlement to a higher rating for a left wrist disability and service connection for a depressive disorder and schizophrenia were addressed in the October 2018. However, the subsequent October 2018 election submitted by the Veteran’s attorney does not request appellate review of these actions. Accordingly, these issues are not currently before the Board and will not be addressed in this decision.

Earlier Effective Date

1. Entitlement to an earlier effective date of service connection for other specified trauma and stress related disorder (claimed as PTSD and previously under DC 9411), prior to December 14, 2015, is denied. 

The Veteran contends that the effective date for the grant of service connection for other specified trauma and stress related disorder should be in March 1977. After a thorough review of the evidence, the Board finds that the currently assigned effective date of December 14, 2015 is proper. 

Generally, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. An effective date earlier than the date of claim may be assigned if an increase in disability is shown within the one-year period prior to the receipt of a claim, but not where the increase is shown prior to the one-year period preceding the receipt of the claim. Gaston v. Shinseki, 605 F.3d 979, 984 (Fed. Cir. 2010). 

The applicable statutory and regulatory provisions require that VA look to all communications from the Veteran that may be interpreted as applications or claims, both formal and informal, for benefits. VA is required to identify and act on informal claims for benefits. 38 U.S.C. § 5102; 38 C.F.R. §§ 3.1(p), 3.155(a). An informal claim must identify the benefit sought and evidence an intent to apply for the benefit. 38 C.F.R. §§ 3.1(p), 3.155(a). Importantly, medical evidence reflecting treatment for and diagnosis of a condition does not constitute, by itself, an informal original claim for service connection under 38 C.F.R. § 3.155(a), “because the mere presence of the medical evidence does not establish an intent on the part of the Veteran to seek” service connection for that condition. MacPhee v. Nicholson, 459 F.3d 1323, 1326 (Fed. Cir. 2006). 

The Veteran submitted a claim for “nervous condition” in March 1977. Based on the evidence in the record, the RO did not adjudicate the claim. However, the Veteran submitted a new claim for PTSD in June 2009. The RO denied entitlement to service connection for PTSD in an October 2009 rating decision. The Veteran was informed of his right to appeal but did not perfect an appeal to the decision. 

The Veteran submitted a new claim for PTSD on December 14, 2015. The Veteran was granted entitlement to service connection for other specified trauma and stress related disorder in an October 2016 rating decision at a 10 percent disability rating with an effective date of December 14, 2015. 

The Veteran argues, through his attorney, that the effective date of the grant of entitlement for other specified trauma and stress related disorder should be March 1977 because the RO did not adjudicate the claim at the time. In support of this argument, the attorney cites Cogburn for the principle that a “reasonable veteran would likely not infer that such a rating decided any other pending mental disorder claims.” See page 5 of October 2018 attorney submission citing Cogburn v. Shinseki, 24 Vet. App. 205, 210 (2010). 

In Cogburn, the Court of Appeals for Veterans Claims (Court) set forth four factors that must be considered when determining whether a claim was implicitly denied: (1) “The relatedness of the claims;” (2) “whether the adjudication alluded to the pending claim in such a way that it could reasonably be inferred that the prior claim was denied;” (3) “the timing of the claims;” and (4) whether “the claimant is represented.” Id. at 212-214.

With respect to the first Cogburn factor, In response, the Board refers to the United States Court of Appeals for Veterans Claims’ (Court) decision in Clemons v. Shinseki, 23 Vet. App. 1 (2009) (finding that a claim for benefits for one psychiatric disability also encompassed benefits based on other psychiatric diagnoses and should be considered by the Board to be within the scope of the filed claim). The October 2009 rating decision mentions “mental health condition” rather than PTSD in the narrative discussion referencing the service treatment records. The rating decision also noted a resolving psychotic depression. The Veteran was informed of his right to appeal but did not perfect an appeal to the October 2009 rating decision. Therefore, the Board concludes that the Veteran’s claim of service connection for PTSD was interpreted to include a claim for any other psychiatric disability as well.

In regard to the second factor, the October 2009 rating decision explained that the claim of service connection for PTSD was in part being denied because the Veteran’s service treatment were negative for any mention or treatment for any mental health condition. 

Regarding the third factor, the timing of the claims, a claim of service connection for any acquired psychiatric disorder was part of the claim of service connection for PTSD under Clemons; thus, the Board finds that adjudication of the March 1977 claim for service connection for “nervous disorder” took place in the October 2009 rating decision in which the Veteran was denied service connection for PTSD. 

For the fourth factor, the Veteran at that time was represented by Disabled American Veterans, a Veterans Service Organization (VSO). VA is required to read filings liberally when a claimant is either pro se or represented by a VSO. Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). Even reading the filings liberally, the Board finds that the October 2009 rating decision implicitly denied a claim of service connection for any psychiatric disorder other than PTSD.

The Veteran did not initiate an appeal of the October 2009 decision, nor did VA actually or constructively receive any new and material evidence within a year following the decision; therefore, the decision became final. 38 U.S.C. § 7105 (c); 38 C.F.R. §§ 3.104 (a), 3.156(b), 20.302, 20.1103. As it is a final decision it is not subject to revision in the absence of clear and unmistakable error (CUE) in the decision. 38 U.S.C. §§ 5109A , 7105; see Rudd v. Nicholson, 20 Vet. App. 296 (2006) (finding that only a request for revision based on CUE could result in the assignment of an effective date earlier than the date of a final decision). A sympathetic reading of the Veteran’s statements and testimony do not reflect that the Veteran has raised a claim of CUE in this decision. See Andrews v. Nicholson, 421 F.3d 1278, 1282 (Fed. Cir. 2005). Therefore, the finality of the October 2009 rating decision precludes the Veteran from obtaining an effective date prior to the date of that rating decision.

Following the October 2009 denial, the first statement from the Veteran expressing an intent to file a claim for service connection for a mental health disability was received on December 14, 2015, when he informed VA that he was seeking service connection for PTSD. The Veteran was afforded a VA examination in August 2016 where he was diagnosed not with PTSD, but with other specified trauma and stress related disorder, for which he was granted entitlement to service connection in an October 2016 rating decision with an effective date of December 14, 2015, in accordance with the principle in Clemons. 

In the present case, following the October 2009 disallowance, there is no communication from the Veteran expressing an intent to file service connection for a mental health condition until December 14, 2015 for “PTSD.” This statement was treated as a claim for service connection for any mental disorder, and the Veteran was granted entitlement to service connection for other specified trauma and stress related disorder with an effective date of December 14, 2015. The Board finds that this is the proper effective date for the grant of entitlement to service connection for other specified trauma and stress related disorder, claimed as PTSD. 38 C.F.R. § 3.400. Accordingly, the appeal for an effective date for the grant of entitlement to service connection for other specified trauma and stress related disorder is denied. 

Increased Rating

2. Evaluation of other specified trauma and stress related disorder (claimed as PTSD and previously under DC 9411), in excess of 30 percent disability rating is denied.

The Veteran contends that his psychiatric disorder symptoms are more severe than the currently assigned disability rating during the period on appeal. After a review of the evidence of record, the Board finds that a disability rating in excess of 30 percent for other specified trauma and stress related disorder is not warranted. 

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities (Rating Schedule), which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

If there is a question as to which evaluation to apply to the Veteran’s disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran’s favor. 38 C.F.R. § 4.3. 

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings are sufficiently characteristic to identify the disease and the resulting disability and coordination of rating with impairment of function. 38 C.F.R. § 4.21. Therefore, the Board has considered the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of his disability in reaching its decision. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). 

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of any disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the veteran’s medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999). 

Mental disorders are evaluated under the general rating formula for mental disorders, a specific rating formula presented under 38 C.F.R. § 4.130. In addition, the fourth edition of the American Psychiatric Association’s Diagnostic and Statistical Manual for Mental Disorders (DSM-IV) provides guidance for the nomenclature employed within 38 C.F.R. § 4.130. 

However, effective August 4, 2014, VA amended the portion of its Schedule for Rating Disabilities dealing with mental disorders and its adjudication regulations that define the term “psychosis” to remove outdated references to the DSM-IV and replace them with references to the recently updated Diagnostic and Statistical Manual (Fifth Edition) (the DSM-5). See 79 Fed. Reg. 45,094 (August 4, 2014). VA adopted as final, without change, this interim final rule and clarified that the provisions of this interim final rule do not apply to claims that have been certified for appeal to the Board or are pending before the Board on or before August 4, 2014. See Schedule for Rating Disabilities - Mental Disorders and Definition of Psychosis for Certain VA Purposes, 80 Fed. Reg. 14,308 (March 19, 2015). In the present case, the Board received the Veteran’s appeal to the Board in October 2018, which is after August 4, 2014. Thus, the version of 38 C.F.R. § 4.125 conforming to the DSM-5 is applicable in the present case. In any event, the Board will still consider any private or VA examiner’s discussion of both the DSM-IV and DSM-5 in adjudicating the current Veteran’s psychiatric disorder claim, in order to provide the Veteran with every benefit of the doubt. 

When evaluating a mental disorder, the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran’s capacity for adjustment during periods of remission must be considered. 38 C.F.R. § 4.126(a). In addition, the evaluation must be based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner’s assessment of the level of disability at the moment of the examination. 38 C.F.R. § 4.126(a). When evaluating the level of disability from a mental disorder, the extent of social impairment is considered, but the rating cannot be assigned solely on the basis of social impairment. 38 C.F.R. § 4.126(b).

As provided by the General Rating Formula, a 30 percent rating is assigned for psychiatric disabilities when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactory, with routine behavior, self-care, and conversation normal), due to such symptoms as depressed mood; anxiety; suspiciousness; panic attacks (weekly or less often); chronic sleep impairment; or mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130. 

A 50 percent rating is assigned when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id. 

A 70 percent rating is in order when there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); and inability to establish and maintain effective relationships. Id.

A 100 percent rating is in order when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. Id. 

A veteran need not exhibit “all, most, or even some” of the symptoms enumerated in the General Rating Formula for Mental Disorders to warrant the assignment of a higher rating. Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Rather, the use of the phrase “such symptoms as,” followed by a list of examples, provides guidance as to the severity of symptomatology contemplated for each rating. Id. In particular, use of such terminology permits consideration of items listed as well as other symptoms and contemplates the effect of those symptoms on the claimant’s social and work situation. Mauerhan, 16 Vet. App. at 442.

The Federal Circuit has clarified that the General Rating Formula for Mental Disorders requires not only (1) sufficient symptoms of the kind listed in the percentage requirements, or others of similar severity, frequency, or duration, but also (2) that those symptoms cause the level of occupational and social impairment specified in the regulation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013). The Federal Circuit endorsed an approach whereby the Board would identify the symptoms associated with the service-connected mental health disability, determine whether they are of the kind enumerated in the regulation, and if so, assess whether they result in the level of occupational and social impairment specified by a particular rating. Id. 

The Veteran is service-connected for specified trauma and stress related disorder at 30 percent from December 14, 2015. After a review of the evidence, the Board finds that an increased disability rating for this disability is not warranted for the Veteran’s service connected acquired psychiatric disorder. 

The Veteran was afforded a VA examination in August 2016. The examiner stated that the Veteran did not meet the DSM-5 criteria for PTSD. However, the examiner diagnosed the Veteran with other specified trauma and stress related disorder. The examiner evaluated the severity of the Veteran’s psychiatric disorder as having been formally diagnosed, but whose symptoms are not severe enough either to interfere with occupation and social functioning or to require continuous medication. This is the equivalent of a noncompensable rating under the mental disorder guidelines. 38 C.F.R. § 4.130. The examiner noted the symptoms of the disorder were anxiety and chronic sleep impairment. 

The Veteran disagreed with the initial determination of evaluation level of 10 percent for the mental disorder in the October 2016 rating decision, and the RO granted an increased disability rating to 30 percent in an October 2018 rating decision with the same effective date of December 14, 2015. 

The August 2016 examination report noted that the Veteran was not currently taking any prescription medication or attending any mental health treatment. The examiner noted symptoms of anxiety and chronic sleep impairment. The Veteran was alert, oriented, presented with good hygiene and good eye contact. The Veteran reported no legal or disciplinary problems. The Veteran’s speech had normal rate, rhythm, and tone. The Veteran’s mood was reported as anxious congruent to thinking. The Veteran’s affect was a full range. The Veteran’s thought process was logical and goal oriented. There was no exhibition of delusional thinking. The Veteran did not report suicidal or homicidal thoughts, plan, or intent. The examiner recorded that the Veteran had problems sleeping, he was easily irritated by others, tended to avoid social contact to prevent outbursts. The Veteran reported a history of violent outbursts and a history of auditory hallucinations, the last of which was in the 1990s. 

The Veteran’s contemporaneous medical treatment records for the appeal period do not document regular mental health treatment. 

In the October 2018 brief by the Veteran’s attorney, he argues that the Veteran’s symptoms for mental disorder warrant a 100 percent, or at least a 70 percent rating, due to a history of violent outbursts and persistent hallucinations. While the Board sees that the Veteran’s medical history shows treatment for psychosis as far back as the 1970s, the Veteran’s current state of mental health does not support a 70 percent disability rating, or even a 50 percent disability rating, for the period under appeal. The Veteran reports that his mental disorder impacts him generally by disruptive sleep and anxiety. The Veteran is not currently on any mental disorder prescription medication nor is he attending regular mental health treatment. The Veteran has not reported himself to have suicidal or homicidal ideations. The examiner in August 2016 evaluated the Veteran’s mental health symptoms to rate a noncompensable level, that is not impacting occupational and social functioning. The evidence of record does not document that the Veteran regularly has violent outbursts during the period on appeal. The Veteran exhibits normal speech and good eye contact. There has not been a report of panic attacks occurring more than once a week which is one sample factor in the 50 percent disability rating category. The Veteran’s judgment and thinking are intact. 

The Board finds that the Veteran’s other specified trauma and stress related disorder more closely approximates the 30 percent disability rating for mental disorders and therefore the appeal for an increased rating is denied. 

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff’d, 78 F.3d 604 (Fed. Cir. 1996). 

The existence of a current disability is the cornerstone of a claim for VA disability compensation. See Degmetich v. Brown, 104 F. 3d 1328 (1997); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

3. Service connection for appendiceal abscess is denied.

The Veteran contends that he had an appendiceal abscess as a result of active service. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease. After a review of the record, the Board concludes that the Veteran has had a condition of appendiceal abscess during the appeal period but the condition is not shown to be related to active service. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. § 3.303(a), (d).

The Veteran’s service treatment records (STRs) do not show treatment for or complaints related to appendiceal abscess. 

The Veteran was diagnosed with appendiceal abscess around October 2015 and underwent an appendectomy in March 2016. 

The Veteran has not been afforded a VA examination for his appendiceal condition. Under 38 U.S.C. § 5103A (d)(2), VA must obtain a medical examination or opinion when such is necessary to make a decision on a claim. Specifically, a VA examination is required where the record contains competent evidence of a current disability and indicates that the disability or symptoms may be associated with military service but does not contain sufficient evidence for the Secretary to make a decision. Here, the record supports that the Veteran has had an appendiceal condition during the appeal period, however, there is no evidence supporting an in-service injury or evidence relating the current condition to the Veteran’s time in service. 

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the claim for an appendiceal abscess disability, that doctrine is not applicable in the instant appeal. See 38 U.S.C. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990). 

4. Service connection for bilateral pes planus is denied.

The Veteran contends that he has a bilateral pes planus condition that is related to active service. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease. After a review of the record, the Board concludes that the Veteran is not currently being treated for bilateral pes planus during the appeal period. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. § 3.303(a), (d). 

The Veteran’s service treatment records (STRs) note 3rd degree bilateral pes planus as asymptomatic on a followup medical entrance examination for active service in March 1963. A veteran is presumed to have been sound upon entry into the military, except as to conditions noted at the time of the acceptance, examination, or enrollment, or where clear and unmistakable evidence demonstrates that the condition existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C. § 1111; Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004). The presumption of soundness applies only when a disease or injury not noted upon entry to service manifests in service, and a question arises as to whether it preexisted service. Gilbert v. Shinseki, 26 Vet. App. 48, 55 (2012), aff’d 749 F.3d 1370 (Fed. Cir. 2014). Here, pes planus was noted upon entry to service, thus the presumption of soundness does not attach. 

A preexisting injury or disease will be considered to have been aggravated by service where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. 38 U.S.C. § 1153; 38 C.F.R. § 3.306. Clear and unmistakable evidence (obvious and manifest) is required to rebut the presumption of aggravation where the pre-service disability underwent an increase in severity during service. Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service. 38 U.S.C. § 1153; 38 C.F.R. § 3.306(b); Falzone v. Brown, 8 Vet. App. 398, 402 (1995). 

The remainder of the Veteran’s service treatment record do not show that any complaints or treatment for pes planus or that the pes planus increased in severity during service. On the contrary, a June 1967 extension examination report notes that the Veteran’s feet were normal. Likewise, a November 1967 examination report in conjunction with the Veteran’s release from active duty also indicates that the Veteran’s feet were clinically normal. 

The Veteran’s current medical treatment records do not document complaints of or treatment for bilateral pes planus. 

To the extent that the Veteran was noted to have pes planus upon entry into active service, subsequent examinations during service do not show that such disability underwent an increase in severity during service. On the contrary, there are no inservice complaints of pes planus and the Veteran’s feet were consistently found to be clinically normal on examination. Accordingly, service connection based on aggravation of a condition noted at service entry is not warranted. Accordingly, as the weight of the medical evidence is against the existence of aggravation of the Veteran’s pes planus during service, the claim for service connection must be denied. 

5. Service connection for ischemic heart disease is denied.

The Veteran contends that he has ischemic heart disease, to include as a result of exposure to Agent Orange. 

A veteran who served in the Republic of Vietnam during the Vietnam era is presumed to have been exposed to certain herbicide agents (e.g., Agent Orange). 38 U.S.C. § 1116; 38 C.F.R. § 3.307. In the case of such a veteran, service connection for certain diseases will be presumed if they become manifest to a degree of 10 percent or more at any time after service. 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307, 3.309. 

Exposure to herbicides is conceded because the Veteran served aboard the USS Montrose from March 11, 1964 to March 15, 1964 which is on the list of ships that operated primarily or exclusively on Vietnam’s inland waterways. This is a favorable finding made by the regional office in the October 2016 rating decision. 

The Veteran had complained of chest pain and underwent testing in 2013. The Veteran had an echocardiogram in September 2013 and the examiner noted possible mild ischemia. The Veteran underwent another cardiology test in September 2013 and the examiner diagnosed normal coronary arteries. There has not been a formal diagnosis of ischemic heart disease or treatment for ischemic heart disease during the period on appeal. 

In the absence of a current disability, there can be no valid claim for service connection. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Accordingly, as the weight of the medical evidence is against the existence of a current ischemic heart disease condition, the claim for service connection must be denied. 

6. Service connection for left eye condition is denied.

The Veteran contends that he has a left eye condition as a result of active service. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease. After a review of the record, the Board concludes that the Veteran is not currently diagnosed with a left eye disability during the appeal period. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. § 3.303(a), (d). 

The Veteran’s service treatment records (STRs) note “defective vision corrected by pinhole” in June 1967. The Veteran’s separation medical examination shows normal vision in both eyes. 

The Veteran’s current medical treatment records document that he wears glasses but there is not a left eye injury or condition diagnosed. 

In the absence of a current disability, there can be no valid claim for service connection. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Accordingly, as the weight of the medical evidence is against the existence of a left eye disability, the claim for service connection must be denied. 

7. Service connection for left lower groin/lower abdomen injury is denied.

The Veteran contends that he has a left groin or left lower abdomen condition as a result of active service. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease. After a review of the record, the Board concludes that the Veteran is not currently diagnosed with a left groin or left lower abdomen disability during the appeal period. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. § 3.303(a), (d). 

The Veteran’s service treatment records (STRs) note a complaint of “pulling sensation” in the left groin area in July 1966. The examiner noted there was no hernia present. At followup appointments in September 1966 and October 1966, the examiner documented no hernia discernible. At the Veteran’s November 1967 separation medical examination, there was no hernia noted. There was a notation of a left lower abdomen scar measuring ½ inch. 

The Veteran was afforded a VA examination in August 2016 for scars and hernia conditions. The examiner noted no scar present on the Veteran’s body and referenced the notation of a left lower groin scar in 1967, but stated that there was no evidence of surgery in that location nor was there a current scar. The examiner noted that there was no evidence of a current hernia. 

The Veteran’s medical treatment records do not document treatment for a left groin or left lower abdomen condition. 

In the absence of a current disability, there can be no valid claim for service connection. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Accordingly, as the weight of the medical evidence is against the existence of a left groin or left lower abdomen disability, the claim for service connection must be denied. 

8. Service connection for right sided carpal tunnel syndrome is denied.

The Veteran contends that he has right side carpal tunnel syndrome as a result of active service. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease. After a review of the record, the Board concludes that the Veteran is not currently diagnosed or treated for right sided carpal tunnel syndrome during the appeal period. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. § 3.303(a), (d). 

The Veteran’s STRs do not document complaints of or treatment for right sided carpal tunnel syndrome. 

The Veteran was seen for complaints of right sided carpal tunnel syndrome in June 2008 and diagnosed with this condition by testing in 2008. 

The Veteran submitted the current claim for entitlement to service connection for right sided carpal tunnel syndrome in May 2016. 

The Veteran’s current medical treatment records do not document complaints of, treatment for, or a current diagnosis of right sided carpal tunnel syndrome. 

In the absence of a current disability, there can be no valid claim for service connection. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Accordingly, as the weight of the medical evidence is against the existence of a right sided carpal tunnel syndrome disability, the claim for service connection must be denied. 

9. Service connection for scar, right ear is denied.

The Veteran contends that he has a scar located near the right ear as a result of active service. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease. After a review of the record, the Board concludes that the Veteran does not have a right ear scar that is symptomatic during the appeal period. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. § 3.303(a), (d). 

The Veteran’s STRs note that on medical examination at entrance to active service in November 1962, a scar near the right ear was noted and the Veteran reported he had previously been treated for right ear scar in 1962 prior to service. At the Veteran’s November 1967 separation medical examination, there was no scar noted. 

A veteran is presumed to have been sound upon entry into the military, except as to conditions noted at the time of the acceptance, examination, or enrollment, or where clear and unmistakable evidence demonstrates that the condition existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C. § 1111; Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004). The presumption of soundness applies only when a disease or injury not noted upon entry to service manifests in service, and a question arises as to whether it preexisted service. Gilbert v. Shinseki, 26 Vet. App. 48, 55 (2012), aff’d 749 F.3d 1370 (Fed. Cir. 2014). Here, the Veteran’s right ear scar was noted upon entry to service, thus the presumption of soundness does not attach. 

A preexisting injury or disease will be considered to have been aggravated by service where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. 38 U.S.C. § 1153; 38 C.F.R. § 3.306. Clear and unmistakable evidence (obvious and manifest) is required to rebut the presumption of aggravation where the pre-service disability underwent an increase in severity during service. Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service. 38 U.S.C. § 1153; 38 C.F.R. § 3.306(b); Falzone v. Brown, 8 Vet. App. 398, 402 (1995). Here, the Veteran’s right ear scar was not noted at separation from active service and was not noted again on the VA examination in August 2016. 

As there is no evidence that the Veteran’s preexisting right ear scar underwent an increase in severity, to the contrary, the evidence supports that it improved or has disappeared, a finding of inservice aggravation is not warranted. As the preponderance of the evidence is against a finding that the Veteran’s pre-existing 

 

right ear scar underwent an increase in severity during active service, entitlement to service connection is denied. 

 

DAVID L. WIGHT

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD E. Miller