﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/20 Archive Date: 04/30/20

DOCKET NO. 190716-15709
DATE: April 30, 2020

ORDER

Service connection for joint pain as due to undiagnosed illness is denied.

Service connection for muscle pain as due to undiagnosed illness is denied.

Service connection for chronic fatigue syndrome is denied.

REMANDED

Service connection for acne keloidalis nuchae of posterior scalp and pilar cyst of vertex (claimed as skin disorder) as due to undiagnosed illness is remanded.

Service connection for chronic diarrhea as due to an undiagnosed illness is remanded.

Service connection for gastroesophageal reflux disease (GERD) as due to an undiagnosed illness is remanded.

FINDINGS OF FACT

1. The Veteran has been diagnosed with arthritis of the right shoulder and both hips; and status post ACL surgery of the right knee; a preponderance of the competent and the probative evidence of record is against a finding that the Veteran’s joint and muscle pain are etiologically related to active service, to include exposure to environmental hazards.

2. The Veteran’s joint and muscle symptoms are not shown to be manifestations of undiagnosed illness or medically unexplained chronic multisymptom illness. 

3. The preponderance of the evidence of record is against finding that the Veteran has had chronic fatigue syndrome at any time during or approximate to the pendency of the claim. 

CONCLUSIONS OF LAW

1. The criteria for service connection for joint pain as due to undiagnosed illness have not been met. 38 U.S.C. § 1110, 1131; 38 C.F.R. §§ 3.102, 3.303, 3.317.

2. The criteria for service connection for muscle pain as due to undiagnosed illness have not been met. 38 U.S.C. § 1110, 1131; 38 C.F.R. §§ 3.102, 3.303, 3.317.

3. The criteria for service connection for chronic fatigue syndrome have not been met. 38 U.S.C. § 1110, 1131; 38 C.F.R. §§ 3.102, 3.303, 3.317.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from March 1988 to November 1991.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. This decision has been written consistent with the new AMA framework.

A September 2016 rating decision, in pertinent part, denied claims for service connection for skin disorder, diarrhea, GERD, joint pain, muscle pain, and chronic fatigue syndrome. The Veteran appealed from that decision.

In July 2019, the Veteran elected the modernized review system following issuance of a statement of the case (SOC) in June 2019. He submitted a timely VA Form 10182 and selected the Evidence Submission docket without a Board hearing. The 90-day evidence submission window has expired.

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004). In the absence of proof of a present disability there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). Service connection may also be warranted on a presumptive basis for certain chronic diseases, including arthritis, if the disease manifests to a compensable degree within one year of separation from 90 days of active service. See 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

Service connection may be established for a Persian Gulf War veteran who exhibits objective indications of a qualifying chronic disability resulting from an undiagnosed illness or medically unexplained chronic multisymptom illness that became manifest either during active service in the Southwest Asia theater of operations during the Persian Gulf War or to a degree of 10 percent or more not later than December 31, 2021. 38 U.S.C. § 1117; 38 C.F.R. § 3.317. For purposes of 38 C.F.R. § 3.317, there are three types of qualifying chronic disabilities: (1) an undiagnosed illness; (2) a medically unexplained chronic multisymptom illness that are defined by a cluster of signs or symptoms such as: (a) chronic fatigue syndrome, (b) fibromyalgia, (c) irritable bowel syndrome, or (d) any other illness that the Secretary determines meets the criteria in paragraph (a)(2)(ii) of this section for a medically unexplained chronic multisymptom illness; and (3) a diagnosed illness that the Secretary determines in regulations prescribed under 38 U.S.C. § 1117 (d) warrants a presumption of service connection. 

The term medically-unexplained chronic multisymptom illness means a diagnosed illness without conclusive pathophysiology or etiology, that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multisymptom illnesses of partially understood etiology and pathophysiology will not be considered medically unexplained. 38 C.F.R. § 3.317 (a).

“Objective indications of chronic disability” include both “signs,” in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317 (a).

The term “Persian Gulf Veteran” means a Veteran who served on active military, naval, or air service in the Southwest Asia Theater of operations during the Persian Gulf War. The Southwest Asia Theater of operations includes Iraq, Kuwait, Saudi Arabia, the neutral zone between Iraq and Saudi Arabia, Bahrain, Qatar, the United Arab Emirates, Oman, the Gulf of Aden, the Gulf of Oman, the Persian Gulf, the Arabian Sea, the Red Sea, and the airspace above these locations. 38 C.F.R. § 3.317 (d). The Veteran’s service records reflect service in the Southwest Asia theater of operations from December 1990 to May 1991, during the Persian Gulf War. Thus, the provisions of 38 C.F.R. § 3.317 are applicable. Consideration of a Veteran’s claim under this regulation does not preclude consideration of entitlement to service connection on a direct basis.

Lay statements may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C. § 1153 (a); 38 C.F.R. § 3.303 (a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). Although lay persons are competent to provide opinions on some medical issues, some medical issues fall outside the realm of common knowledge of a lay person. See Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011).

1. Service connection for joint pain as due to undiagnosed illness

2. Service connection for muscle pain as due to undiagnosed illness

The Veteran contends that he has joint and muscle pain that he believes is related to his Gulf War service.

On the Report of Medical History completed by the Veteran in October 1987, prior to service enlistment, he noted a history of left elbow surgery. The elbow was not considered disabling. 

An October 1989 service treatment record noted that the Veteran had fallen off a truck and hurt his right ankle. Damage to soft tissue/first degree sprain was noted. 

No other joint or muscle complaints were noted in the service treatment records.

An October 2015 treatment record noted the Veteran had complaints of left shoulder weakness following a left cervical lymph node biopsy in 2014.

The Veteran’s wife (a registered nurse) stated in a July 2016 statement that “since his return home from Desert Storm he has often had muscle and joint pain.”

In a July 2016 statement, the Veteran reported hurting all over, “almost like I have the flu all the time.”

On VA examination in September 2016, the examiner noted the Veteran: 

reports he is claiming right shoulder. Veteran reports history of muscles feel “weak” and “fatigued” and “worked out” and the joints “ache”. He reports the symptoms will resolve after he starts to move around, notices symptoms when inactive, states he did discuss with treating providers and no diagnosis or treatment provided. Denies being evaluated by a rheumatologist. Denies any joint swelling or redness. He notices symptoms upon awakening and resolves after moving around. He reports he notices symptoms at night. He reports 6-7/10 achy pain, treats with Motrin most days. Records provided for review document the veteran was seen 12/28/2010 by VA PCP to re-establish VA care. This note documents he reported multiple arthralgias. This note documents he had diffuse arthralgias and would obtain joint films and back films. Records document he underwent whole body bone scan 12/29/2015 with findings of mild acromioclavicular DJD….

He is claiming bilateral elbows…He underwent whole body bone scan 12/29/2015 with negative findings to the bilateral elbows.

He is claiming bilateral hands…He underwent whole body bone scan 12/29/2015 with negative findings to the bilateral hands…. 

He is claiming bilateral ankles…He underwent whole body bone scan 12/29/2015 with negative findings to the bilateral ankles.

He reports he is claiming his hips and points to his bilateral SI joints of his lower back. No separate hip condition claimed, no separate hip condition found, no further examination required… He underwent whole body bone 12/29/2015 with findings of mild degenerative arthritis to the bilateral SI joints….

He is claiming bilateral foot… He underwent whole body bone scan 12/29/2015 with negative findings to the bilateral foot.

The VA examiner in September 2016 stated that:

There is no undiagnosed condition or multisymptom illness undiagnosed or diagnosed that would be at least as likely as not secondary to specific exposure experienced by the veteran during service in Southwest Asia….

Records provided for review document the Veteran was diagnosed with mild right AC DJD, right knee injury s/p ACL reconstruction, and mild bilateral SI degenerative arthritis for his reported right shoulder, right knee, and SI joint pain. These diagnoses are diseases with a clear and specific etiology and diagnosis, thus, less likely than not related to a specific exposure event experienced by the Veteran during service in Southwest Asia. There is no medical, clinical, or diagnostic evidence to support any condition for the Veteran’s reported bilateral elbow pain, bilateral hand pain, left knee pain, bilateral ankle pain, or bilateral feet pain; all with normal examination findings, thus, not related to a specific exposure event experienced by the Veteran during service in Southwest Asia.

To the extent the Veteran has arthritis of the right shoulder and the bilateral sacroiliac joints, the evidence does not show that the arthritis was manifest to a compensable degree within one year of separation of service. Additionally, the evidence weighs against continuity of symptomatology given the lack of complaint of joint or muscle problems in service and the post-service evidence, in particular the lack of shoulder or hip complaints for many years following service. Thus, service connection is not warranted under the provisions pertaining to presumptive service connection for chronic diseases. See 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.303 (b), 3.307, 3.309.

Additionally, as the Veteran served in the Southwest Asia theater of operations during the Persian Gulf War, the Board must consider whether he is entitled to presumptive service connection under 38 C.F.R. § 3.317. To the extent that the Veteran contends that his right shoulder and bilateral hip pain is part of an undiagnosed illness from the Gulf War, the evidence does not demonstrate that the Veteran has an undiagnosed illness. Rather, he has been diagnosed with osteoarthritis of these joints. Similarly, his right knee pain has been attributed to status post ACL surgery; no right knee injury was noted in service, thus there is no basis for service connection for a right knee disability. 

The preponderance of the evidence weighs against presumptive service connection for muscle and joint pain under 38 C.F.R. § 3.317 as undiagnosed illnesses; medically unexplained chronic multi- symptom illnesses; or diagnosed illnesses. As noted, the reported joint and muscle pain reported in the hips, right shoulder, and right knee have all been associated with clear diagnoses. As the Veteran has been diagnosed with these specific conditions, he does not have an undiagnosed illness. 

The September 2016 VA examiner opined that the Veteran’s claimed joint pain and muscle pain symptoms were not undiagnosed conditions or evidence of a multisymptom illness.

The Board finds the VA medical opinion highly probative because the examiner had the appropriate training, expertise and knowledge to evaluate the claimed disabilities. Furthermore, she reviewed the records, performed an examination, and considered the Veteran’s statements regarding the nature and history of his condition. The examiner provided a sufficient rationale for her conclusions reached. Additionally, there are no competent opinions to the contrary.

The competent evidence also weighs against a finding of direct service connection. Service treatment records are silent for any in-service event or injury related to the Veteran’s current conditions. While a left ankle injury was noted in service, there is no current left ankle disability present. 

The only competent medical opinion of record is the VA examiner’s opinion which opined that the Veteran’s muscle and joint complaints are unlikely to be related to service. Again, there are no competent opinions to the contrary.

The Veteran, as a lay person, is not competent to determine whether his muscle and joint symptoms are part of an undiagnosed illness or a medically unexplained chronic multisymptom illness, because he has not been shown to possess the knowledge and expertise needed to make such a determination. Even if the Veteran were competent to provide an opinion as to the etiology of his complaints, the Board finds that the probative value of any such opinion is outweighed by that of the September 2016 examiner who has the appropriate clinical education, training, and experience to provide such an opinion.

Consequently, the preponderance of the evidence weighs against service connection. As such, the benefit of the doubt doctrine does not apply, and service connection is not warranted. See 38 U.S.C. § 5107 (West 2015); 38 C.F.R. § 3.102 (2016); Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

3. Service connection for chronic fatigue syndrome

The Veteran seeks service connection for chronic fatigue syndrome (CFS). 

Service treatment records do not document any complaints, treatment, or diagnosis of CFS or fatigue.

A September 2015 VA treatment record noted that the Veteran’s reported fatigue may be explained by sleep apnea; the Veteran wanted to hold off on having a sleep study.

On VA Gulf War examination in September 2016, the examiner noted that the Veteran denied any history of diagnosis or treatment for chronic fatigue syndrome. He reported he was checked for high parathyroid level and low vitamin D and was found to have elevated parathyroidism and vitamin D deficiency. He reported being constantly tired, can sleep 8-10 hours at night and may fall asleep at 8 or 9 am the next morning after awakening. He reported that throughout the day he could fall asleep. The Veteran stated that two or three times a night he would wake up and not know why. He reported 15-20 years of fatigue and waking up at night. The examiner stated that there was no medical or clinical evidence to support a chronic fatigue syndrome, and no constitutional signs consistent with chronic fatigue syndrome. “Veteran’s reported fatigue is more than likely due to his history of hyperparathyroidism, vitamin D deficiency, and mental health condition.” The examiner further stated: “Records are silent for any chronic fatigue syndrome condition, diagnosis, or treatment. No chronic fatigue syndrome found, thus, not related to a specific exposure event experienced by the Veteran during service in Southwest Asia.” The examiner further stated: “There is no undiagnosed condition or multisymptom illness undiagnosed or diagnosed that would be at least as likely as not secondary to specific exposure experienced by the veteran during service in Southwest Asia.”

In a written statement, the Veteran’s wife noted that: “Since his return home from Desert Storm he has been tired all the time, has aches and pains all over and takes daily naps. He received various injections and the anti-nerve agent pills. He was exposed to the oil fires. He was also exposed to other environmental hazards while in the desert.”

Based on the evidence, the Board concludes that the Veteran does not have a current diagnosis of CFS and has not had one at any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

While the Veteran may believe he has CFS, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires specialized medical education and knowledge and the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). The Veteran’s wife is a registered nurse which reflects medical training. However, she did not provide a diagnosis of chronic fatigue syndrome. 

Consequently, the Board gives more probative weight to the competent medical evidence. To the extent that the Veteran reports symptoms of fatigue, the medical records reflect these complaints are associated with his possible sleep apnea or a psychiatric disability. 

Consequently, the preponderance of the evidence is against finding that the Veteran has CFS, or a Gulf War illness manifested by chronic fatigue. In the absence of a present disability, there can be no valid claim. Thus, there is no doubt to be resolved. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102. Accordingly, service connection is denied. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

REASONS FOR REMAND

1. Service connection for acne keloidalis nuchae of posterior scalp and pilar cyst of vertex

A remand is required to correct pre-decisional duty to assist error.

The service treatment records do not contain any findings related to skin disorder or growth of the head or neck. On a May 1991 health questionnaire, the Veteran was asked if he had “hives or skin rash” and he did not indicate that he did.

The Veteran was seen in August 2005 to establish VA care. At that time the Veteran reported he had rash/hives that came and went; the examination at that time found no rash. 

A January 2011 Gulf War Registry examination noted no skin lesions and no neck masses.

The Veteran was seen in February 2014 and reported lesions on the scalp that he stated had been present since 1991, one on the top of head and the other on the back of the neck. The February 2014 treatment note contained a diagnosis of folliculitis barbae. 

A VA dermatology note in April 2014 documented the Veteran had a 20-year history of pustules and cysts to posterior scalp. He presented with a large keloid at the site that was very itchy. There was a bump on the top of his scalp that had been present for many years and was slightly bigger. He was diagnosed with acne keloidalis nuchae to posterior scalp with findings of 2 X 4 centimeter keloidal plaque with multiple perifollicular erythematous papules. He received injection of ILK throughout the plaque. He was also diagnosed with pilar cyst to the vertex (top of head); excision was offered but he declined.

In April 2014 he was seen with report of left neck mass that had been present for six weeks. The Veteran underwent excisional biopsy of a left posterior triangle neck mass in May 2014.

A May 2014 treatment record noted “scalp with keloid type mass at base of skull status post dermatology biopsy; top of head with 9mm round, soft tissue mass possible epidermal cyst.”

On VA examination in September 2016, the Veteran reported a history of skin condition to back of neck since service in the desert. He reported he had to shave the back of his neck. The Veteran reported “bumps” that had grown over time, and that he had tried creams, and injections, but nothing was effective. He reported itchy bumps to back of his neck that were visible; he preferred not to wear his hair short. The Veteran reported having used cortisone cream while in the service and that this was not effective. He reported they thought it was a parasite when he first returned from the Gulf but that was ruled out. 

The VA examiner noted that records provided for review document the Veteran was diagnosed with acne keloidalis nuchae posterior scalp, and pilar cyst to vertex. “Acne keloidalis nuchae posterior scalp and pilar cyst to vertex are diseases with a clear and specific etiology and diagnosis, thus, less likely than not related to a specific exposure event experienced by the veteran during service in Southwest Asia.” The examiner further stated: “There is no undiagnosed condition or multisymptom illness undiagnosed or diagnosed that would be at least as likely as not secondary to specific exposure experienced by the veteran during service in Southwest Asia.”

In a written statement received in July 2016, the Veteran noted; “While I was in the desert, we had to cut our head bald to keep the sand fleas and bugs out of our hair. Ever since this time, I have had huge pus and fluid filled lumps/bumps on the back of my neck. I’ve been seen by the VA numerous times and they have injected them and they say they can’t do anything for it. Now they are keloids/scars.”

The Veteran’s wife, a registered nurse, provided a written statement in July 2016: “My husband has lumps/bumps on the back of his neck since he returned home from combat. He has told his VA doctors and VA dermatology. They have gotten progressively worse to the point he has developed keloids and scars. He has tried creams, injections, and antibiotics without relief.”

As the September 2016 VA examiner did not comment on the lay statements of the Veteran and his wife (who, as noted, is a RN), and did not provide an opinion as to whether the claimed conditions had onset during or are otherwise related to service, an addendum opinion is required.

2. Service connection for chronic diarrhea as due to an undiagnosed illness

A remand is required to correct pre-decisional duty to assist error.

The service treatment records note one complaint of diarrhea in April 1990. This was noted to be a symptom of a viral syndrome.

When the Veteran was seen in August 2005 to establish VA care, he reported chronic diarrhea without abdominal pain. He was seen in December 2010 for complaints of chronic diarrhea since returning from the Gulf War. At that time, the Veteran reported loose stools occurring twice daily without pain or soiling self. On a February 2014 treatment record, the Veteran reported occasional diarrhea.

On VA Gulf War examination in September 2016, the Veteran reported that he noticed diarrhea during the Gulf War. He reported having diarrhea since he returned from the Gulf War. He denied any medical treatment for this condition during or after military discharge. He reported loose stool every day and diarrhea about five times a week and that he could have diarrhea two to three times in one day. The Veteran reported that his diarrhea was not related to diet. He reported bloating and gas, with no current weight loss. The examiner noted that “current records provided for review are silent for any chronic diarrhea condition, diagnosis, or treatment and are silent for any complaints of diarrhea. No medical or clinical evidence of irritable bowel syndrome.” The examiner stated that “records provided for review document the veteran was diagnosed with chronic diarrhea condition. Chronic diarrhea condition is a disease with a clear and specific etiology and diagnosis, thus, less likely than not related to a specific exposure event experienced by the veteran during service in Southwest Asia.”

In a written statement, the Veteran’s wife, a registered nurse, noted that the Veteran “has had chronic diarrhea since he returned from Desert Storm and told me that the tablets they made him take turned his stool jet black. He has diarrhea to this day.”

The Veteran provided a statement in July 2016 attesting to having had diarrhea since service.

As the September 2016 VA examiner did not comment on the lay statements of the Veteran and his wife (who, as noted, is a RN), and did not provide an opinion as to whether the Veteran’s chronic diarrhea had onset during or is otherwise related to service, an addendum opinion is required.

3. Service connection for GERD 

A remand is required to correct pre-decisional duty to assist error.

The Veteran contends that he has had GERD symptoms since service.

A private treatment record dated in August 2004 noted that the Veteran had GERD and was being seen in consultation from a Dr W. Treatment records from Dr W. are relevant to establishing the onset of the Veteran’s GERD and have not been sought. 

The Veteran’s wife in her July 2016 statement noted that “since his return home from Desert Storm, he has had stomach upset, indigestion, and GERD. The tablets he was made to take while in combat caused stomach upset, black stools, and diarrhea.”

In a July 2016 statement, the Veteran reported that “I have had stomach upset, indigestion, acid reflux, and heart burn, since I came back from the desert. I’ve been on some form of medicine for these symptoms for years. I am currently taking omeprazole. If I don’t take it, I have severe acid reflux and pain. Sometimes it wakes me up at night and I have aspirated it.”

The VA examiner in September 2016 stated that “GERD is a disease with a clear and specific etiology and diagnosis, thus, less likely than not related to a specific exposure event experienced by the veteran during service in Southwest Asia.”

As the September 2016 VA examiner did not comment on the lay statements of the Veteran and his wife (who, as noted, is a RN), and did not provide an opinion as to whether the Veteran’s GERD had onset during or is otherwise related to service, an addendum opinion is required.

The matters are REMANDED for the following action:

1. Contact the Veteran and request the names of treatment providers who have treated him for skin disorders of the head/neck, diarrhea, and/or GERD since service. After obtaining any necessary releases, obtain the identified records. Specifically, obtain records of treatment for GERD from 2004 and earlier from Charles Wagner, M.D.

2. Obtain an addendum opinion from an appropriate clinician(s) regarding whether the Veteran’s acne keloidalis nuchae of posterior scalp and pilar cyst of vertex, diarrhea, and GERD at least as likely as not had onset during service or are otherwise related to service. A supporting rationale must be provided for any opinion expressed. 

The examiner(s) is advised that the Veteran reports that he suffered from skin problems on the head and neck, diarrhea and problems with reflux since service. The examiner must specifically comment on the written statements provided by the Veteran and his wife (a registered nurse) in July 2016. 

 

 

D. JOHNSON

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. G. Mazzucchelli, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.