Citation Nr: AXXXXXXXX
Decision Date: 07/29/21 Archive Date: 07/29/21

DOCKET NO. 190404-16366
DATE: July 29, 2021

ORDER

Service connection for tinnitus is granted.

Service connection for Graves' disease is granted.

Service connection for an eye condition, claimed as glaucoma, is granted.

Service connection for diabetes mellitus is denied.

Service connection for flat feet is denied.

FINDINGS OF FACT

1. The Veteran's tinnitus is related to his active service.

2. The Veteran's currently diagnosed Graves' disease is related to his active service in the Republic of Vietnam.

3. The Veteran's eye condition, currently diagnosed as glaucoma, is proximately due to his now service-connected Graves' disease.

4. The Veteran does not have a current diagnosis of diabetes mellitus, Type II.

5. The Veteran does not have a current diagnosis of acquired flat feet related to active service.

CONCLUSIONS OF LAW

1. The criteria for service connection for tinnitus have been met. 38 U.S.C. §§ 1110, 1112, 1113, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385.

2. The criteria for service connection for Graves' disease have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

3. The Veteran's eye condition, diagnosed as glaucoma and Graves' orbitopathy, as secondary to service-connected Grave's disease, have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310.

4. The criteria for service connection for diabetes mellitus, Type II, have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

5. The criteria for service connection for flat feet have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from November 1969 to June 1971, including service in the Republic of Vietnam.

This case is before the Board of Veterans' Appeals (Board) on appeal from a March 2019 Regional Office (RO) rating decision. In that rating decision, the RO denied service connection for tinnitus, Graves' disease, glaucoma, diabetes mellitus, and flat feet. The March 2019 rating decision provides a favorable finding that the Veteran's DD-214 confirms service in Vietnam, and that exposure to Agent Orange was conceded.

In April 2019, the Veteran filed a VA Form 10182 Notice of Disagreement (NOD), selecting a Hearing with a Veterans Law Judge.

In March 2021, the Veteran testified at a virtual hearing before the undersigned Veterans Law Judge. A transcript of his testimony is associated with the claims file.

Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal, as well as any evidence submitted by the Veteran or his representative at the hearing or within 90 days following the hearing. 38 C.F.R. § 20.302(a).

Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). "To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"- the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection for certain chronic diseases may also be established based upon a legal "presumption" by showing that the disease manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C. §§ 1112, 1137; 38 C.F.R. §§ 3.307, 3.309. In addition, service connection may be granted for any disease diagnosed after service when all the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Secondary service connection may be granted for a disability that is proximately due to, or aggravated by, a service-connected condition. 38 C.F.R. § 3.310.

1. Entitlement to service connection for tinnitus

The Veteran contends that his tinnitus began during service and is related to in-service noise exposure.

The Board concludes that the Veteran currently has tinnitus related to active service. 38 U.S.C. §§ 1110, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a).

The March 2019 rating decision provides favorable findings that the Veteran was diagnosed with tinnitus and that his DD-214 shows that the Veteran's MOS was highly probable for noise exposure.

Private treatment records indicate that the examiner noted no change in tinnitus; in a July 2015 record, it notes that the Veteran had no significant change in hearing or in tinnitus. An August 2016 record shows that the Veteran was negative for hearing loss and tinnitus.

The Veteran underwent a VA examination for tinnitus in February 2019. The examiner stated that the Veteran reported the onset of tinnitus within the last couple of years and that he reported about 30 seconds of tinnitus once or twice a week. The examiner opined that the Veteran's tinnitus was less likely than not caused by or a result of military noise exposure. The examiner's rationale was that without audiometric records at or near the time of separation, there is no objective evidence of noise injury. He stated that the combat Veteran's statement is given a higher probative value in the absence of objective evidence, but that he states tinnitus did not begin until about 2 years ago, about 46 years after separation. The examiner noted that private medical records confirm his statement, with documented denials of tinnitus in September 2012, August 2016, and August 2017. Without any objective or anecdotal evidence of tinnitus onset nearer to the time of service, there is no evidence to support a link between military noise exposure and tinnitus onset. 

During the March 2021 Board hearing, the Veteran testified that he has had tinnitus ever since service. He stated that his first assignment was with the largest artillery guns they have, and that they provided ear plugs but that he used them inconsistently. He stated that he misunderstood the examiner during his VA examination when the was asked about the onset of his tinnitus but that he did in fact have tinnitus since service. He stated that his experience so far shows that it is never going away and that it comes and goes at various volumes, noting that it does not last for a long time but sometimes is really intense. He stated that since service there has been no defined pattern, and that it is intermittent. 

The competent medical evidence of record, as discussed above, shows that the Veteran has a diagnosis of tinnitus, and based on the Veteran's credible testimony that he has been experiencing tinnitus since service, the Board finds that his diagnosed tinnitus, is related to his active service. 

Tinnitus, or ringing in the ears, is an observable symptom capable of lay observation. While the February 2019 VA examiner, based in part on treatment records where the Veteran did not report tinnitus, and that without audiometric records at or near the time of separation, there is no objective evidence of noise injury, found that the Veteran's tinnitus did not have its onset in service. However, the examiner did not take into account that the Veteran reports that his tinnitus is intermittent, and that he was not being treated specifically for hearing related problems in those medical records. In addition, the examiner mentioned no evidence of noise injury during service; however, he did not acknowledge that exposure to noise was conceded based on the Veteran's MOS. In addition, the Veteran competently and credibly testified that he misunderstood the VA examiner when he asked about the onset of his tinnitus and that he has experienced tinnitus intermittently since service. 

Thus, upon review of the record, the evidence is at least in equipoise as to whether the Veteran's tinnitus is directly related to service. Accordingly, after resolving all doubt in favor of the Veteran, service connection for tinnitus is warranted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

2. Entitlement to service connection for Graves' disease

3. Entitlement to service connection for glaucoma 

The Veteran contends that his Grave's disease was the direct result of in-service exposure to Agent Orange, and that his eye condition, claimed as glaucoma and diagnosed as Graves' orbitopathy (Graves' Eye disease) and bilateral compressive optic neuropathy, is also due to exposure to Agent Orange, or alternatively, secondary to his Graves' disease.

From the outset, the Board is bound by the RO's favorable findings of in-service herbicide exposure as outlined in the March 2019 rating decision. 38 C.F.R. § 20.801.

Service treatment records (STRs) show that the June 1971 separation examination revealed a normal clinical evaluation for all systems. The November 1969 entrance examination shows that clinical evaluation was abnormal for mouth and throat, upper extremities, feet, and lower extremities. A November 7, 1969 record shows normal optometry screening, but the Veteran was diagnosed with myopia and astigmatism. 

Private treatment records received in November 2018 indicate a history of Graves' disease and Graves' orbitopathy. A February 2012 record shows pre and postoperative diagnoses of bilateral Graves' orbitopathy and bilateral compressive optic neuropathy, left greater than right. Review of systems on February 25, 2012 shows that the Veteran's eyes were positive for double vision (chronic) and redness, but negative for blurred vision, photophobia, pain, and discharge.

In a February 2019 statement to his doctor, the Veteran stated that as a Vietnam Veteran he had been informed that they may consider that his Graves' Disease, ophthalmic, and glaucoma conditions might be associated with dioxin exposures. He advised that he was sending abstracts from articles which may support that opinion but that he lacks the medical training to interpret accurately, requesting that the doctor consider whether it is possible that his conditions may be connected to dioxin exposure.

During the March 2021 hearing, the Veteran testified, regarding his Grave's disease and glaucoma, that he was having some problems with a heavy rash on his knees and legs. He stated that he was prescribed medication, which made the rash worse, but that additional testing determined that it was caused by Graves' disease. He stated that they put him on thyroid medication for Grave's disease and the rash went away, and that he has been taking that medication since then, for about 10 years. He stated that originally the Graves' disease began in his thyroid but migrated to his eyes. The Veteran asserted that he believes his Graves' disease is due to Agent Orange exposure, and that they submitted research, found by his daughter who is a research scientist, showing a relationship between Graves' disease and Agent Orange. In addition, the Veteran testified that he has a diagnosis of glaucoma, and that he believes he has had it for the last several years and that it is related to his service in Vietnam and exposure to Agent Orange.

The Veteran provided multiple research articles regarding a possible connection between Agent Orange exposure and diseases or disorders related to the thyroid.

In a March 2021 private medical opinion, the Veteran's physician stated that the Veteran has suffered from Graves' disease with hyperthyroidism and Graves' Eye disease since 2010 and has been treated with medical therapy for several years. The examiner opined that it is very likely that his Graves' disease is related to his exposure to Agent Orange during the Vietnam War. He stated that Vietnam Veterans exposed to this Agent were more frequently affected by Graves' disease, with a threefold higher prevalence compared to controls, based on medical research. He stated that, accordingly, he considers the Veteran's Graves' disease to be a service-related condition.

Private treatment records from April 2021 show medical history including diagnoses of Graves' disease, Graves' Eye disease, and hyperthyroidism. A July 2020 visit note shows diagnoses of glaucoma suspect of both eyes, ophthalmic Graves' disease, and nuclear sclerosis of both eyes.

In an April 2021 private medical opinion, the Veteran's ophthalmologist stated that he had been treating the Veteran for a number of years for thyroid eye disease. He stated that the Veteran's endocrinologist reported an established relationship with Agent Orange and Graves' disease. He stated that Graves' disease and Graves' Eye disease are closely related and that given this association, the Veteran's thyroid eye disease is at least as likely as not associated with his Graves' disease from Agent Orange exposure. 

The competent medical evidence of record, as discussed above, shows that the Veteran has a diagnosis of Graves' disease and Graves' Eye disease, and based on the March 2021 and April 2021 private medical opinions, the Veteran's diagnosed Graves' disease is, as likely as not, related to his presumed exposure to Agent Orange during active service, and his diagnosed Graves' Eye disease is related to his Graves' disease. 

In summary, the claims file reflects current diagnoses of Graves' disease and Graves' Eye disease as well as in-service exposure to AO. A competent medical professional has provided a nexus correlating the two; and, there is no contradictory medical opinion of record. Therefore, service-connection on a direct basis is warranted for Graves' disease. In addition, the record confirms an eye condition, diagnosed as Graves' Eye disease, and a competent medical professional has provided a nexus correlating the Veteran's now service-connected Graves' disease with his diagnosed eye condition, Graves' Eye disease. Therefore, service connection on a secondary basis is warranted for his eye condition, diagnosed as Graves' Eye disease.

Thus, upon review of the record, the evidence is at least in equipoise as to whether the Veteran's Graves' disease is directly related to service, and his eye condition, diagnosed as Graves' Eye disease, is related to Graves' disease on a secondary basis. Accordingly, after resolving all doubt in favor of the Veteran, service connection for Graves' disease and for Graves' Eye disease is warranted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

4. Entitlement to service connection for diabetes mellitus

The Veteran contends that his claimed diabetes mellitus is directly related to active service, to include as due to exposure to Agent Orange during service.

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that the Veteran does not have a current diagnosis of diabetes mellitus and has not had one at any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

In March 2019, the Veteran underwent a VA examination for diabetes mellitus. The report shows that there is no official diagnosis of Diabetes Mellitus Type I or Type II, noting that the Veteran does not meet criteria for a diagnosis of diabetes. The examiner opined that based on the review of all available medical records, review of available medical literature in this regard, and in accordance with accepted medical principles and treatises, that there is insufficient evidence to support a diagnosis of Diabetes Mellitus Type II. The examiner's rationale was that the enlistment examination on November 6, 1969, separation examination on June 11, 1971, STRs, and other medical records are all silent for any diagnosis of impaired fasting glucose or Diabetes Mellitus Type II. The examiner noted that hemoglobin A1C levels were 5.9% on July 31, 2017, 6.2% on December 11, 2017, and 6.2% on February 21, 2019. The examiner stated that he does not take any medication or follow any ADA diet, and his fasting and non-fasting serum glucose levels have not been elevated. 

During the March 2021 hearing, the Veteran testified, regarding his claimed diabetes that, admittedly, he does not have an actual diagnosis of diabetes. He stated that he believes he has previously been told that he is borderline diabetic but has not received an actual diagnosis.

While the Veteran contends that he has diabetes related to active service, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). In fact, the Veteran testified during the Board hearing that he has not received a medical diagnosis of diabetes mellitus but rather is borderline diabetic, and this is consistent with the findings in the medical records. Consequently, the probative evidence weighs against the claim.

The most competent and probative evidence with regard to diabetes are the medical records and the Board hearing testimony from the Veteran, both indicating no current diagnosis of diabetes. Accordingly, service connection for diabetes mellitus must be denied, at this time, based on the evidence of record. See 38 C.F.R. §§ 3.102, 3.303; McClain v. Nicholson, 21 Vet. App. 319 (2007); Brammer v. Derwinski, 3 Vet. App. 223 (1995).

For the foregoing reasons, the preponderance of the evidence is against the claim for service connection for diabetes mellitus. Therefore, the benefit of the doubt doctrine is not for application, and the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

5. Entitlement to service connection for flat feet

The Veteran contends that his claimed bilateral flat feet condition is related to active service.

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury or disease.

The Board concludes that the Veteran does not have a current diagnosis of flat feet and has not had one at any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

Medical treatment records indicate treatment for the Veteran's feet, noting bilateral feet with signs of tinea pedis to soles of feet and between toes bilaterally. VA treatment records do not indicate a diagnosis of pes planus or flat feet.

During the March 2021 hearing, the Veteran testified, regarding his flat feet, that he was denied service connection for flat feet/pes planus because he did not have a diagnosis of flat feet. He stated that he now has a diagnosis of flat feet and that he has been given some supports to put in his shoes. He stated that he received his diagnosis from a private provider. The Veteran's spouse indicated that there was no notation on the Veteran's entrance examination of any type of flat feet or pes planus, and that they did not know if his flat feet were congenital or if they developed during service or as a result of service. The Veteran stated that prior to service he did not have any problems from flat feet, and that he remembers that it might have been during his advance training in service when his feet first began to start hurting. He stated that there was a time when he had to stop the training because his foot hurt so much.

While the Veteran believes he has a current diagnosis of flat feet, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires specialized medical education and knowledge. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the competent medical evidence.

VA's duty to assist includes providing a medical examination when necessary to decide a claim. 38 U.S.C. § 5103A(d); 38 C.F.R. § 3.159(c)(4). Such development is necessary if the evidence of record does not contain sufficient competent medical evidence to decide the claim, but (1) contains competent evidence of diagnosed disability or symptoms of disability, (2) establishes that the veteran suffered an event, injury or disease in service, or has a presumptive disease during the pertinent presumptive period, and (3) shows that the claimed disability may be associated with the in-service event, injury, or disease, or with another service-connected disability. 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006) (noting that the third element establishes a low threshold and requires only that the evidence "shows" that there "may" be a nexus between the current disability or symptoms and active service, including equivocal or non-specific medical evidence or credible lay evidence of continuity of symptomatology).

Based on the evidence above, the probative evidence lacks any competent indication that the Veteran has a diagnosis of flat feet or of an etiological relationship between the Veteran's claimed condition and his service. Thus, a VA examination under the standards of McLendon is not warranted at this time. 

The most competent and probative evidence with regard to the Veteran's claimed flat feet condition are the medical treatment records, indicating no current diagnosis of flat feet. While the Veteran testified during the March 2021 hearing that he does now have a diagnosis of flat feet/pes planus, the available medical evidence of record does not corroborate this assertion. Accordingly, service connection for flat feet must be denied at this time based on the evidence of record. See 38 C.F.R. §§ 3.102, 3.303; McClain v. Nicholson, 21 Vet. App. 319 (2007); Brammer v. Derwinski, 3 Vet. App. 223 (1995).

For the foregoing reasons, the preponderance of the evidence is against the claim for service connection for flat feet. The benefit of the doubt doctrine is therefore not for application, and the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

 

L. B. CRYAN

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board A. Labi, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.